Filed 7/6/26  In re R.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re R.G. et al., Persons Coming Under the Juvenile Court Law. | |
| | D087480 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J520962BC) |
| Plaintiff and Respondent, | |
| v. | |
| J.G., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Lilys D. McCoy, Judge.  Conditionally reversed and remanded with directions.

Clare M. Lemon, under appointment by the Court of Appeal, for Defendant and Appellant.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristin M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

J.G. (Mother) appeals from the juvenile court's order terminating parental rights over her children R.G. and O.G.  (Welf. & Inst. Code,[1] § 366.26.)  Mother contends, and the San Diego County Health and Human Services Agency (Agency) concedes, that the Agency failed to comply with its initial inquiry duties under the federal Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because there is not substantial evidence of an adequate initial ICWA inquiry with the maternal relatives.  We accept the Agency's concession, conditionally reverse the order terminating Mother's parental rights, and remand for the limited purpose of compliance with ICWA and its related statutory provisions.  (See *In re Dezi C.* (2024) 16 Cal.5th 1112, 1136.)  The parties have stipulated to the immediate issuance of remittitur.

FACTUAL AND PROCEDURAL BACKGROUND

The sole issue on appeal is compliance with ICWA.  The relevant factual and procedural background is thus limited.

When R.G. was born in February 2023, he tested positive for amphetamines and methamphetamines, and the Agency filed a petition to detain him under section 300, subdivision (b).

Mother was living with the maternal grandparents and uncle.  Nothing in the Agency's report indicates it spoke with the relatives with whom Mother resided.  There was an open case on the family for R.G.'s sibling in which the court found ICWA did not apply.  At the detention hearing, the court deferred ICWA findings.

---

[1]   Further undesignated statutory references are to the Welfare and Institutions Code.

2

Ahead of the contested jurisdiction and disposition hearing, the Agency met with Mother and asked if anyone in the family had ever lived on a reservation, received assistance from a tribe, or been members or enrolled members in a tribe, and she responded, "Not that I am aware of." She said no one in her family spoke a Native American language or was active in tribal activities, and that she did not have a tribal membership or enrollment number. The Agency's jurisdiction and disposition report listed 21 people with the same last name as mother to whom it sent relative notification letters. There is no indication the letters requested information about Native American heritage.

R.G.'s father, paternal aunt, and paternal grandmother denied Native American ancestry.

At the contested adjudication and disposition hearing for R.G. on May 23, 2023, the court found without prejudice that ICWA did not apply.

At R.G.'s section 366.26 pretrial status conference on February 18, 2025, the court noted the Agency had no new information regarding ICWA, and it confirmed ICWA did not apply. At the contested section 366.22 and 18-month review hearing, the court continued to find, without prejudice, that ICWA did not apply.

In December 2023, O.G. was born and tested positive for amphetamines, methamphetamines, and THC. The Agency filed a petition under section 300, subdivision (b). In its report, the Agency explained that the court in O.G.'s siblings' cases found ICWA did not apply. It also reported that Mother and O.G.'s maternal aunt Jessica M. denied Native American heritage. At O.G.'s detention hearing, the court deferred ICWA findings pending inquiries from the Agency.

3

In the jurisdictional and dispositional report for O.G., the Agency indicated Mother had no new information regarding ICWA, and the maternal aunt Jessica M. denied Native American heritage. Mother mentioned a half-sister, Jennifer M., and an older brother, Jonathan G. The Agency separately learned of Jennifer M. during the pendency of the matter. The Agency did not report inquiring with Jennifer M. or Jonathan G. about possible Native American ancestry.

O.G.'s paternal aunt and grandmother also denied any Native American heritage. The paternal grandmother had not been in contact with the paternal grandfather since O.G.'s father was three, and she did not remember the paternal grandfather claiming to have Native American ancestry. Father also denied any Native American heritage, though he indicated a paternal great grandmother Mercedes O. spoke a language called, "Narwat."[2] He did not know if it was a tribal language. He told the Agency he had two brothers, Juan G. and Albert G.

The Agency recommended a finding without prejudice that ICWA did not apply.

At O.G.'s contested adjudication and disposition hearing on April 5, 2024, the court found without prejudice that ICWA did not apply. The Agency referenced this finding in R.G.'s section 366.26 report as well.

At O.G.'s contested section 366.21 and 12-month review hearing, the court found, without prejudice, that ICWA did not apply. The Agency

---

[2] "Narwat" appears to refer to the Nawat language, a "natively-spoken Nahuan language in Central America." (Matthew & Bannister, *The Form of the Content: The Digital Archive Nahuatl/Nawat in Central America* (2020) Digital Humanities Quarterly, vol. 14, No. 4, par. 9.)

referenced the ICWA finding from the adjudication and disposition hearing in O.G.'s section 366.26 report.

On January 30, 2026, the juvenile court terminated parental rights for R.G. and O.G. and found ICWA did not apply.

DISCUSSION

Congress enacted ICWA to address concerns regarding the separation of children with Native American ancestry from their tribes through adoption or foster care placement with non-Native American families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) The juvenile court and the Agency have an affirmative and continuing duty to inquire whether a dependent child "is or may be an Indian child" in all dependency proceedings. (§ 224.2, subd. (a).)

California's current statutory scheme contains "three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) First, from the Agency's initial contact with minors and their family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be a Native American child. (§ 224.2, subds. (a) & (b).) Second, if the initial inquiry creates a "reason to believe" the children have Native American ancestry, the Agency is required to make further inquiry in the status of the children as soon as is practicable. (*D.S.*, at p. 1052, citing § 224.2, subd. (e).) "Third, if that further inquiry results in a reason to *know* the child[ren are] Indian child[ren], then the formal notice requirements of section 224.3 apply." (*D.S.*, at p. 1052.)

In its initial inquiry, the Agency is obligated to conduct an ICWA inquiry of those who qualify as " 'extended family member[s].' " (See 25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is

5

the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c)(1).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S., supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

Mother contends the Agency failed to meet its duty of initial inquiry because it did not ask her extended family members, other than one maternal aunt, about the minors' potential Native American ancestry.

The Agency knew the maternal grandparents' and maternal uncle's address because Mother resided with them, but it did not inquire with them about possible Native American ancestry. The Agency also had contact with maternal aunt Jennifer M., but it did not ask her about possible Native American heritage. Because the Agency failed to ask the maternal aunt Jennifer M. or grandmother about possible Native American heritage, the Agency did not comply with ICWA. If the initial inquiry had created a reason to believe the minors had Native American heritage, it would have triggered additional duties. (See *D.S., supra*, 46 Cal.App.5th at p. 1052.) The Agency acknowledges its error.

## DISPOSITION

The court's order terminating Mother's parental rights is conditionally reversed. The matter is remanded to the juvenile court for the limited purpose of fully complying with the inquiry provisions of ICWA and related California law.

If after inquiry, neither the Agency nor the juvenile court has reason to believe the minors are children with Native American ancestry, the court

shall reinstate the court order terminating Mother's parental rights.  If, after completing the inquiry, the Agency or the juvenile court has reason to believe or know the children have Native American ancestry, the juvenile court shall proceed in conformity with ICWA and related law.

The remittitur shall issue immediately.

BUCHANAN, J.

WE CONCUR:

DATO, Acting P. J.

KELETY, J.